# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| A.B., <br> a child by his next friend, Linda Kehoe, <br> <br> Plaintiff, <br> <br> v. <br> <br> HOUSING AUTHORITY OF <br> SOUTH BEND, <br> <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) 3:11 CV 163 PPS <br> ) <br> ) <br> ) <br> ) <br> ) |

## OPINION AND ORDER

Plaintiff A.B., a minor, brought this action through his next friend, Linda Kehoe, against the Housing Authority of South Bend ("HASB") alleging that A.B. and his mother were wrongfully evicted from public housing owned by HASB. A.B. asserts claims under the Fair Housing Act, the Americans with Disabilities Act, the Rehabilitation Act, the Fourteenth Amendment to the United States Constitution, and Indiana state law. Before the Court is HASB's Motion to Dismiss the Complaint. [DE 15.] For the following reasons, the motion is **GRANTED**, though I will grant A.B. leave to replead.

## BACKGROUND

I start with the facts alleged in the Complaint, which at this point I must accept as true. A.B. is a minor who lived with his mother, Autumn Oliver, in public housing owned by HASB. HASB is a public housing authority that administers the public housing program for low-income residents in South Bend, Indiana. On February 28, 2011, Oliver was arrested by South Bend police near her residence and was charged with possession of cocaine and resisting law

enforcement officers.  Less than a month later, HASB sent Oliver a "Notice to Terminate Lease."  The Notice stated that HASB was terminating Oliver's rental lease because of her February arrest, and she was given 30 days to vacate the property.  The Notice informed Oliver that she did not qualify for a pre-termination hearing because of the nature of her arrest.  The Notice was signed by four of the seven HASB commissioners.  On April 13, 2011, Oliver pled guilty to possession of cocaine and resisting law enforcement.

Then on April 19, 2011 – after receiving the Notice but before Oliver and A.B. were forced to vacate – A.B. filed this action through his grandmother and next friend, Linda Kehoe.  The Complaint asserts that, while HASB regarded or treated Oliver as a drug abuser, she does not use drugs and has successfully completed a drug rehabilitation program.  Based on this, the Complaint alleges that the eviction violates the Fair Housing Act, the Americans with Disabilities Act, the Rehabilitation Act, the Fourteenth Amendment to the United States Constitution, the Indiana Constitution, and Indiana Code § 34-17-1-1.  A.B., as a person associated with his mother, seeks monetary damages, a declaratory judgment, and preliminary and permanent injunctions, among other relief.

Oliver and A.B. continued to reside in their HASB administered housing after the deadline to vacate the premises ran, which was April 22, 2011.  So, on April 28, 2011, HASB filed a complaint in St. Joseph, Indiana Superior Court Small Claims Division against Oliver seeking enforcement of the eviction and immediate possession of the rental unit.  The state court scheduled an immediate possession hearing for June 24, 2011.  In response to HASB's state court complaint, A.B. sought an order from this Court enjoining HASB from pursing the eviction in state court.  After holding a hearing on the matter, I denied the motion.  Days later, the state

court granted HASB immediate possession of Oliver and A.B.'s rental unit.

While the motion for a preliminary injunction was pending, HASB filed this motion to dismiss. In this motion, HASB argues that this Court does not have subject matter jurisdiction over A.B.'s claims, and, in any event, the Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## DISCUSSION

### I. Subject Matter Jurisdiction

First, HASB argues that this Court lacks subject matter jurisdiction because A.B.'s claims in this Court arise out of the Indiana state court's final judgment granting HASB immediate possession of Oliver's rental unit. As a result, HASB believes that jurisdiction is foreclosed by the *Rooker-Feldman* doctrine.

I disagree. True enough, the *Rooker-Feldman* doctrine precludes individuals from seeking review of state court judgments in federal district court. *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 509 (7th Cir. 1996). But the Seventh Circuit has described it as an "extremely limited" doctrine, applying to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 590 (7th Cir. 2005) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). So the doctrine only applies where "the losing party in state court filed suit in federal court *after the state proceedings ended.*" *Id.* at 591 (emphasis in original). That's not the case here – A.B. brought the federal action *before* the state court proceedings even began. So the *Rooker-Feldman* doctrine does not deprive this court of

jurisdiction.[1]

## II. Failure to State a Claim

Next, HASB argues that A.B.'s Complaint fails to state a claim under Rule 12(b)(6). As an initial matter, A.B. argues that this motion should be converted into a motion for summary judgment because HASB incorporated documents that are outside the pleadings from its motion for preliminary injunction into its motion to dismiss. Indeed, with a few exceptions, I may only consider the allegations raised in the complaint on a motion to dismiss. *LaPorte Savings Bank v. Schmidt*, 2011 WL 2516536, at *2 (N.D. Ind. June 23, 2011). So when a defendant's Rule 12(b)(6) motion presents matters outside the pleadings, I may either exclude the matters outside the pleadings or convert the motion to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).

Here, I have not relied on any of the evidence that HASB attached to its motion for preliminary injunction in deciding this motion. And A.B. specifically does not argue that the exhibits HASB attached to its motion to dismiss are impermissible. Indeed, while I am taking judicial notice of two documents that HASB attached to its motion to dismiss – Oliver's guilty plea and the Indiana state court's order granting HASB immediate possession – I may take judicial notice of public records without converting a Rule 12(b)(6) motion into one for summary

---

[1] Notably, while neither party raised the issue, I do question whether the Court has standing to hear A.B.'s claims in which he seeks to enforce his mother's rights. A prudential limitation on standing presumes that a third party may not redress an injury by enforcing someone else's rights, though Congress may expressly override this limitation. *See Family Children's Center, Inc. v. School City of Mishawaka*, 13 F.3d 1052, 1059-60 (7th Cir. 1994). Yet, because prudential standing requirements are not jurisdictional, I need not address the issue here. *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 756 (7th Cir. 2008). Moreover, the issue is moot because I am dismissing these claims for other reasons.

judgment.² *Gen. Electric Cap. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997); *see, e.g., Sledge v. Bellwood School Dist. 88*, 2010 WL 1579920, at *4 (N.D. Ill. Apr. 20, 2010) (taking judicial notice of state court orders and filings); *Stewart v. Anderson*, 2000 WL 1741885, at *3 (N.D. Ill. Nov. 24, 2000) (taking judicial notice of guilty plea). As a result, I do not need to convert this into a motion for summary judgment.

Turning to the merits. The minimum requirements for pleading a claim for relief are contained in Federal Rule of Civil Procedure 8. That rule requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. But to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555 (2007). And although at this stage I must accept all allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by mere conclusory statements. *Iqbal*, 129 S.Ct. at 1949-50. So, under *Iqbal*, I must first identify allegations in the complaint that are not entitled to the assumption of truth by, for example, disregarding legal conclusions. *Id*. at 1951. Then I must look at the remaining allegations to determine whether they plausibly suggest an entitlement to relief. *Id*. Determining whether a

---

² A.B. asks me to take judicial notice of a letter from Oliver's Drug Court Case Manager, which was attached to a filing in her state court case. The letter states that as of March 2011, Oliver has been undergoing drug treatment and is in full compliance with all of the treatment's requirements. Notably, the timing of her drug treatment per the letter (March 2011 – after her arrest) raises more questions than answers. Yet, as I discuss more thoroughly below, I find that A.B. has adequately alleged in his Complaint that Oliver is no longer using drugs and has completed a drug treatment program – the reasons he wants me to judicially notice the letter. As a result, A.B.'s motion to take judicial notice of the letter is **DENIED** as moot. [DE 23.]

complaint states a plausible claim for relief requires me to draw on my judicial experience and common sense. *Id*. at 1950.

**A.     FHA, ADA, and Rehabilitation Act**

First, A.B. asserts that HASB violated the Fair Housing Act, the Americans with Disabilities Act, and the Rehabilitation Act because it evicted Oliver on the basis of her disability and failed to reasonably accommodate her disability. All three of these statutes prohibit a public entity from: intentionally discriminating on the basis of an individual's disability, or disparate treatment; failing to provide reasonable accommodations to a disabled individual; and enacting a rule that has a discriminatory effect on the disabled, or disparate impact. *See* 42 U.S.C. § 3604(f) (FHA); 42 U.S.C. § 12132 (ADA); 29 U.S.C. § 794(a) (Rehabilitation Act); *Bloch v. Frischholz*, 587 F.3d 771, 784 (7th Cir. 2009); *Wisconsin Comm. Services. Inc. v. City of Milwaukee*, 465 F.3d 737, 746-54 (7th Cir. 2006). Because, for the purpose of this motion, the standards for these claims under the three statutes are essentially the same, I analyze the statutes together. *See Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 782 (7th Cir. 2002); *Jackson v. City of Chicago*, 414 F.3d 806, 810-11 (7th Cir. 2005); *Dadian v. Village of Wilmette*, 269 F.3d 831, 837 (7th Cir. 2001).

HASB first argues that A.B. failed to allege that Oliver is disabled – an element of disparate treatment, failure to accommodate, and disparate impact claims. An individual is disabled under the ADA, FHA, and the Rehabilitation Act where she has: 1) a mental or physical impairment that substantially limits a major life activity, 2) a record of such an impairment, or 3)

is regarded as having such an impairment. 42 U.S.C. § 3602(h)[3]; 42 U.S.C. § 12102(1); 29 U.S.C. § 705(9). HASB argues that A.B. fails to properly allege that Oliver is disabled because, while the complaint asserts that Oliver is no longer a drug *user*, it does not state she's a drug *addict*.

I disagree. As an initial matter, HASB does not argue that drug addiction is not a disability under the statutes; so for purposes of this motion, I will assume that it is. *See* 28 C.F.R. § 35.104 (listing "drug addiction" among a list of physical or mental impairments); *Pernice v. City of Chicago*, 237 F.3d 783, 786 n.1 (7th Cir. 2001) ("Whether drug addiction constitutes a 'disability' within the meaning of the ADA is a separate question, which we leave for another day."); *Abron v. Soo Line R. Co.*, 2009 WL 2567979, at *3 (N.D. Ill. Aug. 18, 2009) (assuming drug addiction is a disability under the ADA).

And A.B. has adequately alleged that his mother is a drug addict. In his Complaint, A.B. alleges that his mother no longer uses drugs and has successfully completed a drug rehabilitation program, though HASB continues to regard her as a drug user. While the Complaint certainly left much unsaid, notice pleading remains the law of the land. *Swanson v. Citibank*, *N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). And these facts plausibly suggest that Oliver is either a drug addict or regarded as one and sufficiently put HASB on notice that A.B.'s claims arise out of this disability. That is all that is required to survive a motion to dismiss. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 559 (7th Cir. 2010) ("Pursuant to Rule 8, pleading is meant to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of

---

[3] The FHA uses the term "handicapped" rather than "disabled." But because both have the same definition, I use the term disabled throughout for the sake of simplicity.

court.") (internal quotations omitted); *see also Homeyer v. Stanley Tulchin Associates, Inc.*, 91 F.3d 959, 962 (7th Cir. 1996) (holding that "disability" under the ADA is "a fact-based inquiry and [the] determination is not generally motion to dismiss territory."); *Andriacchi v. City of Chicago*, 1996 WL 685458, at *2 (N.D. Ill. Nov. 22, 1996) (alleging that plaintiff participated in a drug treatment program is enough to allege drug addiction).

Yet, HASB argues that even if Oliver is disabled, A.B's FHA, ADA, and Rehabilitation Act claims must be dismissed. First, HASB claims that A.B.'s disparate treatment claims fail because the Complaint does not allege that HASB had discriminatory intent when it evicted Oliver. Indeed, HASB asserts that A.B. pled himself out of court by admitting that HASB terminated the lease because of Oliver's arrest for drug possession and resisting law enforcement.

Intent to discriminate is an essential element of A.B.'s disparate treatment claims under the FHA, ADA, and Rehabilitation Act. S*ee Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Ross*, 486 F.3d 267, 278 (7th Cir. 2007); *Bloch*, 587 F.3d at 784. Here, the Complaint alleges that less than a month after Oliver was arrested for possessing cocaine and evading law enforcement, she received a Notice stating that her lease was terminated because of her arrest. The Notice also justified the termination by stating that Oliver's actions involved criminal activity that threatened the health and safety of others. Nonetheless, the Complaint goes on to state: "HASB based its decisions to evict A.B. and his mother on the mother's status as an individual with a handicap." [DE 1 ¶¶ 16(a), 17(e), 18(j).] It also stated: "HASB's purported reasons for threatening to evict A.B. and his mother are illegal or pretextual, and only a cover for discrimination against A.B.'s mother as an individual with a handicap," [*id*. ¶ 16(c)], and HASB

"inconsistently, selectively, and unfairly threatened to evict A.B. in contrast to other similarly situated HASB tenants," [*id*. ¶ 19(b)]. Finally, the Complaint asserts multiple times that "HASB acted intentionally, maliciously, and in wanton and reckless disregard of the rights and feelings of A.B" and discriminated against Oliver "because of" her disability. [*See id*. ¶¶ 16(j), (l).]

To determine if these allegations plausibly allege discriminatory intent, I begin by disregarding conclusory allegations that are not entitled to the assumption of truth. *See Iqbal*, 129 S.Ct. at 1951. The Supreme Court's analysis in *Iqbal*, a discrimination case, is instructive. The Court in *Iqbal* began by reiterating that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements' of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 1949 (internal citations omitted). Based on this, the Court held that the plaintiff's allegation that the defendant "knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin'" was conclusory in nature, and thus not entitled to the assumption of truth. *Id*. at 1951 ("These bare assertions . . . amount to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim."). In fact, the Court specifically rejected the notion that a plaintiff may allege discriminatory intent "generally" by merely asserting that the defendant discriminated against him "on account of" his protected status. *Id*. at 1954.

The Seventh Circuit embraced *Iqbal's* approach of disregarding conclusory allegations in *Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009). In *Brooks*, the Court interpreted *Iqbal* as admonishing those plaintiffs who "merely parrot the statutory language of the claims that they are pleading . . . rather than providing some specific facts to ground those legal claims." *Id*. at 581.

As a result, the Court rejected the plaintiff's allegation that the defendants violated 42 U.S.C. § 1983 by "knowingly, intentionally, and maliciously" retaliating against him for exercising his constitutional rights. *Id*. at 582. The Court held that, by simply reciting the cause of action, the complaint did not put the defendants on notice of what they did to violate the plaintiff's constitutional rights, and so it failed to state a claim. *Id*.

Here, A.B.'s allegations related to HASB's intent must be disregarded for the same reason. The only allegations in the Complaint suggesting discriminatory intent assert that HASB acted "intentionally and maliciously," evicted Oliver "because of" or "on the basis of [her] disability," and unfairly treated Oliver compared to "similarly situated" tenants. These are precisely the type of general allegations, devoid of any factual enhancement, that the courts in *Iqbal* and *Brooks* rejected as conclusory. *See Iqbal*, 129 S.Ct. at 1951 (disregarding allegation that defendant "willfully and maliciously" acted "solely on account of" the plaintiff's protected status). In fact, they are nothing more than rote copy and paste reproductions of the statutory language and implementing regulations. *Compare*, *e.g.*, DE 1 ¶ 16(j) *and* 24 CFR § 100.50; DE 1 ¶¶ 17(e), 18(j) *and* 28 CFR § 35.130. Rule 8 demands more than this type of "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949, 1954 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."); *see also Swanson*, 614 F.3d at 405 ("[Conslusory] statements [] do not add to the notice that Rule 8 demands"); *see, e.g.*, *McReynolds v. Merrill Lynch & Co., Inc.*, 2011 WL 1196859, at *4 (N.D. Ill. Mar. 29, 2011) ("In short, plaintiffs allege that the system was designed with discriminatory intent, but under *Iqbal* they must do more. They must plead sufficient factual matter to show that defendants adopted and implemented the retention system not for a

neutral reason, but for the purpose of discriminating against African-American FAs.").

Indeed, the factual assertions in the Complaint – that HASB terminated the lease just over three weeks after Oliver was arrested for possessing cocaine and resisting law enforcement – support HASB's claim that Oliver's lease was terminated because of her arrest, not because of Oliver's disability. In fact, public housing leases must provide that drug-related criminal activity is grounds for terminating the offender's tenancy. 42 U.S.C. § 1437d(l)(6); *see Dept. of Housing & Urban Dev. v. Rucker*, 535 U.S. 125, 135 (2002) (no fault eviction for drug-related activity is constitutional). Moreover, A.B.'s response brief does not even attempt to explain how the facts in the Complaint demonstrate HASB's discriminatory intent; instead, he merely copied large portions of the Complaint and pasted them into the brief. Simply put, the Complaint does not allege any facts plausibly suggesting that HASB terminated the lease because of Oliver's disability. *See Iqbal*, 129 S.Ct. at 1951-52 ("As between that 'obvious alternative explanation' for the arrests, and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion.") (internal citations omitted). As a result, A.B.'s disparate treatment claims fail to state a claim.

Notably, the Seventh Circuit's recent opinion in *Swanson v. Citibank* does not require a different result. 614 F.3d 400 (7th Cir. 2010). In *Swanson*, the plaintiff claimed that the defendants violated the Fair Housing Act by denying her home-loan application because of her race. The Court found that the plaintiff stated a claim under the FHA because the facts in the complaint plausibly identified the type of discrimination at issue, by whom, and when. *Id*. at 405. And while the Court acknowledged *Iqbal's* finding that conclusory legal statements are not entitled to the assumption of truth, the Court did not disregard any allegations as conclusory.

That's because the plaintiff's allegations put the defendants on notice by alleging facts plausibly supporting her discrimination claims. For example, the complaint alleged that one of the defendants attempted to prevent the plaintiff from filling out a home-loan form by, for example, requiring that her husband be present at the meeting in person, at a time when the only thing the defendant knew about the plaintiff was her race. *Id*. at 402-03. In addition, one of the defendant's employees made an off-hand reference to the plaintiff's race during the application process. *Id*.

But this case is miles apart from *Swanson*. As I noted above, unlike in *Swanson*, A.B. alleges no facts that ground A.B.'s claim of intentional discrimination, instead reciting the elements of his cause of action along with conclusory legal statements. Like in *Iqbal* and *Brooks*, I must disregard these allegations. And because the properly alleged facts fail to plausibly suggest that HASB acted with discriminatory intent, A.B.'s disparate treatment claims are dismissed for failure to state a claim.

For a similar reason, A.B.'s failure to accommodate claims fail. To succeed on a failure to accommodate claim, a plaintiff must request an accommodation. *See E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 803-04 (7th Cir. 2005); *Wisconsin Comm. Servs.*, 465 F.3d at 749. But not only does the Complaint allege no facts that plausibly suggest that Oliver requested an accommodation from HASB for her disability, it fails to identify an accommodation that Oliver needed, or provide any factual context supporting a failure to accommodate claim. *See Riley v. Vilsack*, 665 F. Supp. 2d 994, 1007-08 (W.D. Wis. 2009) (dismissing failure to accommodate claim because the complaint lacked any factual details in support).

In fact, the Complaint's only mention of an accommodation are that: "HASB's purported

policies of evicting tenants for the reasons given in this case are refusals to make reasonable accommodations in rules, policies, and practices"; and HASB "fail[ed] to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination." [DE 1 ¶¶ 16(d), 17(e), 18(j).] Again, these are the type of conclusory and formulaic allegations that I must ignore because they provide no notice to the defendant. *See Iqbal*, 129 S.Ct. at 1149-51. Simply put, A.B. has presented no facts plausibly supporting his failure to accommodate claims. And tellingly, he has failed to address HASB's arguments in support of dismissal. *See County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006) ("When presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action."). So A.B.'s failure to accommodate claims are dismissed.

Also, to the extent A.B. asserts a disparate impact claim (which is far from clear), it's dismissed. A.B.'s response brief hints to a disparate impact claim. [DE 26 at 7 ("Moreover, under *Alexander v. Choate*, A.B. has alleged claims which arise from the effect of HASB's actions, apart from HASB's intent.").] But the argument is undeveloped and thus waived. *United States v. Alden*, 527 F.3d 653, 664 (7th Cir. 2008) ("Because it is not the obligation of this Court to research and construct the legal arguments available to parties, these arguments are waived and warrant no discussion.") (internal citation omitted); *Perez v. Illinois*, 488 F.3d 773, 776-77 (7th Cir. 2007) ("[P]erfunctory and undeveloped arguments are deemed waived"). In any event, the claim fails because the Complaint does not identify a HASB policy or practice that has a disparate impact on the disabled. *See Steele v. GE Money Bank*, 2009 WL 393860, at *3 (N.D. Ill. Feb. 19, 2009) ("To allege a disparate impact claim . . . a plaintiff must identify a specific practice or policy adopted by the defendant" that disparately effects a protected group) (citing

*Smith v. City of Jackson*, 544 U.S. 228, 241 (2005)); *Bennett v. Roberts*, 295 F.3d 687, 698 (7th Cir. 2002) ("Isolated and singular incidents generally are insufficient to constitute a specific employment practice.").

**B.     Fourteenth Amendment**

Next, A.B. asserts that HASB violated the equal protection and due process clauses of the Fourteenth Amendment. Again, A.B. presents little or no factual support in the Complaint and no explanation or legal support in the response brief for these claims.

Like the statutory counts, to state a claim under the equal protection clause, a plaintiff must allege that the defendant was "motivated by a discriminatory purpose." *Chavez v. Ill. State Police,* 251 F.3d 612, 635-36 (7th Cir. 2001). So, for the reasons stated above, A.B.'s equal protection claim fails because he does not allege any facts plausibly suggesting that HASB acted with discriminatory intent.

A.B.'s procedural due process claim under the Fourteenth Amendment also fails. To state a procedural due process claim, a plaintiff must allege that he was deprived of a protected property interest without notice and a fair opportunity to be heard. *Abcarian v. McDonald*, 617 F.3d 931, 941 (7th Cir. 2010). Under 24 C.F.R. § 966.53(c), due process requires adequate notice to the tenant of the grounds for eviction, the right to counsel, an opportunity to refute any evidence, and a decision on the merits. 24 C.F.R. § 966.53(c); *Jones v. Housing Authority of City of South Bend*, 915 N.E.2d 490, 497 (Ind. App. 2009) ("Notice and opportunity to be heard is precisely what the procedural safeguards of 24 C.F.R. § 966.53 provide."); *Hunter v. Underwood*, 362 F.3d 468, 479 (8th Cir. 2004) ("By the very terms of [24 C.F.R. § 966.53(c)], these procedural requirements are all that is necessary to satisfy the 'elements of due process.'").

Because A.B. and Oliver have a property interest in their leasehold, *Rucker*, 535 U.S. at 135-36, the issue is whether the state court eviction procedures were adequate.

I find that they were. According to the Complaint, HASB sent Oliver a Notice that stated her lease was being terminated in 30 days and laid out the grounds for eviction. And while Oliver was not given a pre-termination grievance hearing, she was given an opportunity to contest her eviction with counsel in Indiana state court, and the state court proceeding occurred before Oliver was forced to give up possession of the property. *See* 42 U.S.C. § 1437d(k) (pre-termination hearing unnecessary for drug-related criminal activity where state court action provides necessary due process and occurs before actual eviction). And importantly, A.B. does not suggest – in the Complaint or his response brief – that these procedures were unfair. So, because Oliver had notice of her eviction and a fair opportunity to be heard, the procedural due process requirements are satisfied.

In addition, to the extent A.B. asserts a substantive due process violation (again, unclear), that claim fails. Because there is no fundamental right to public housing, *see Hassan v. Wright*, 45 F.3d 1063, 1069 (7th Cir. 1995); *Grant v. City of Chicago*, 594 F.Supp. 1441, 1450-51 (D.C. Ill. 1984), A.B.'s substantive due process claim fails unless HASB's actions were arbitrary or irrational. *General Auto Service Station v. City of Chicago*, 526 F.3d 991, 1000 (7th Cir. 2008). But here, HASB had good cause to evict – Oliver's arrest and subsequent guilty plea for possessing cocaine and evading law enforcement. *See Rucker*, 535 U.S. at 130 ("42 U.S.C. § 1437d( *l* )(6) unambiguously requires lease terms that vest local public housing authorities with the discretion to evict tenants for the drug-related activity of household members"). Indeed, as the Supreme Court found in *Rucker*, "[t]here are . . . no serious constitutional doubts about

Congress' affording local public housing authorities the discretion to conduct no-fault evictions for drug-related crime." *Id.* at 135. And, yet again, A.B. makes no argument as to why this claim should proceed. So A.B. has failed to state a substantive due process claim.

**C.      State Law Supplemental Claims**

Finally, A.B. asserts that HASB violated A.B.'s right to due course of law under the Indiana Constitution and exceeded its statutory authority under the (rarely cited) Indiana *quo warranto* statute, Indiana Code § 34-17-1-1. But because I am dismissing all federal claims, I only have pendent jurisdiction over A.B.'s supplemental state law claims. And as a general rule, "when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir. 1998) (quoting *Wright v. Associated Ins. Cos. Inc.,* 29 F.3d 1244, 1251 (7th Cir. 1994)); 28 U.S.C. § 1367(c)(3). The exceptions to this rule are when the statute of limitations has run on the state law claims, substantial judicial resources have already been used, or it is absolutely clear how the state law issues should be decided. *Sharp Electronics Corp. v. Metropolitan Life Ins. Co.,* 578 F.3d 505, 514-15 (7th Cir. 2009).

Here, the statute of limitations has not run and, because the case is in its infancy, substantial judicial resources have not been used. Also, although A.B.'s due course of law claim is analogous to his federal due process claim, *see McIntosh v. Melroe Co.*, 729 N.E.2d 972, 976 (Ind. 2000), it is not immediately clear how I should resolve A.B.'s *quo warranto* claim under Indiana Code § 34-17-1-1. A *quo warranto* complaint may be filed "[w]hen a corporation: (A) exceeds or abuses the authority conferred upon the corporation by law; or (B) exercises authority

not conferred upon it by law." Ind. Code § 34-17-1-1(6). With that said, the statute is generally a means of contesting the right of a party to hold public office. *Hovanec v. Diaz*, 397 N.E.2d 1249, 1250 (Ind. 1979); Ind. Code § 34–17–1–1(1); *Lake County Sheriff's Merit Bd. v. Buncich*, 869 N.E.2d 482, 484 (Ind. App. 2007) ("*Quo warranto* means 'by what authority' or 'by what warrant'"). The action may be filed by a prosecuting attorney or a person with "an interest in the office, franchise, or corporation that is the subject of the information." Ind. Code § 34-17-2-1.

A.B. claims that HASB exceeded its statutory authority by terminating Oliver's lease with only four of the seven commissioners on the HASB Board. But it is not immediately clear if the *quo warranto* statute covers this type of claim or if A.B. has an "interest" in HASB sufficient to confer standing to bring suit under the statute. I will leave it to Indiana state courts to flesh out the bounds of this doctrine. Also, while Indiana Code § 36-7-18-13 is clear that four housing authority commissioners constitute a quorum and a "majority vote of the commissioners present is required to authorize an action of the authority," the latter is only true "unless a greater vote is required by the bylaws of the authority." Ind. Code § 36-7-18-13. And the terms of HASB's bylaws are not before the Court. As a result, because I am dismissing A.B.'s federal claims, and it is not clear how Indiana courts would resolve this state law issue, I decline to exercise supplemental jurisdiction over A.B.'s state law supplemental claims.

\* \* \* \*

In sum: A.B.'s disparate treatment, failure to accommodate, and disparate impact claims under the FHA, the ADA, and the Rehabilitation Act, and his equal protection and due process claims under the Fourteenth Amendment are dismissed. But, because I am dismissing these claims for failure to provide HASB adequate notice, I must do so without prejudice and grant

A.B. leave to replead, if he so desires. *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 782 (7th Cir. 2007) ("Failure to provide fair notice should not normally warrant a dismissal *with prejudice*.") (emphasis in original). And because I am declining to exercise supplemental jurisdiction over A.B.'s state law claims under the Indiana Constitution and Indiana Code § 34–17–1–1, these claims are also dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, HASB's Motion to Dismiss is **GRANTED**. [DE 15.] A.B.'s claims are dismissed without prejudice. A.B. has **30 days** from the date of this order to file an amended complaint curing the deficiencies raised in this Opinion.

**SO ORDERED**.

ENTERED: September 8, 2011.

s/ Philip P. Simon  
PHILIP P. SIMON, CHIEF JUDGE  
UNITED STATES DISTRICT COURT