UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| A.B., a child by his next friend, Linda Kehoe, Plaintiff, v. HOUSING AUTHORITY OF SOUTH BEND, Defendant. | 3:11 CV 163 PPS |

## OPINION AND ORDER

Plaintiff A.B., a minor, brought this action against the Housing Authority of South Bend ("HASB") alleging that A.B. and his mother were wrongfully evicted from public housing owned by HASB. A.B. brings claims under the Fair Housing Act, the Americans with Disabilities Act, the Rehabilitation Act, the Fourteenth Amendment, and Indiana state law. I dismissed A.B.'s original complaint and permitted him to amend his complaint, which he did. HASB now seeks dismissal of A.B.'s First Amended Complaint. [DE 48.] For the following reasons, the motion is **GRANTED**.

## BACKGROUND

I'll start with the facts alleged in the First Amended Complaint, as well as the documents it references. [DE 46; DE 49.][1] A.B. is a minor who lived with his mother, Autumn Oliver, in

---

[1] The First Amended Complaint references the notice of eviction numerous times, but did not attach it to the complaint. HASB attached it to its motion, and so I will consider the Notice as part of the pleadings without converting this motion to a motion for summary judgment. *McCready v. eBay, Inc.*, 453 F.3d 882, 891-82 (7th Cir. 2006) ("documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." (citations omitted)); *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

1

public housing owned by the HASB. HASB is a public housing authority that administers the public housing program for low-income residents in South Bend, Indiana. On February 28, 2011, Oliver was arrested by South Bend police near her residence, and later charged with possession of cocaine (a Class D felony under Indiana law) and resisting law enforcement officers, (a Class A Misdemeanor). [DE 49-1, Ex. 2.] About three weeks later, HASB sent Oliver a "Notice to Terminate Lease." The Notice stated that HASB was terminating Oliver's lease because of her February cocaine possession arrest. [DE 49-1, Ex. 1.] She was given 30 days to vacate the property, and the Notice informed Oliver that she did not qualify for a pre-termination hearing because of the nature of her arrest. [*Id.*]

On April 13, 2011, Oliver pled guilty to possession of cocaine and resisting law enforcement. As part of her plea she agreed to participate in a Drug Court program whereby if she keeps clean and follows the rules of the program for a minimum of 12 months and successfully graduates from the program, she would then be permitted to withdraw her plea of guilty and the State would dismiss the charges against her with prejudice. [DE 49-1, Ex. 3.]

Less than a week after his mom pled guilty, in an apparent effort to stave off the eviction, A.B. filed a complaint in this Court, through his grandmother and next friend, Linda Kehoe, seeking to enjoin HASB from pursuing the eviction in state court. Why A.B., who is a minor, is the plaintiff in this case, as opposed to his mother Autumn Oliver, is a bit of a puzzle. In any event, after holding a hearing on the request for a preliminary injunction, I denied the motion [DE 9], and that decision is presently on appeal to the Seventh Circuit.

A.B. and his mother continued to live in the premises despite the notice of eviction. This prompted HASB to file a complaint in St. Joseph County Superior Court against Oliver seeking

2

enforcement of the eviction and immediate possession of the rental unit. The state court scheduled an immediate possession hearing for June 24, 2011 and later court granted HASB immediate possession of the rental unit.

In response to A.B.'s Complaint in this court, HASB filed a Motion to Dismiss, arguing that I did not have subject matter jurisdiction over A.B.'s claims, and, in any event, that the Complaint failed to state a claim upon which relief could be granted. [DE 15]. I found that subject matter jurisdiction existed [DE 45 at 3], but that A.B.'s pleadings fell below the notice pleading standard in part because the Complaint failed to allege any facts that supported intentional discrimination. [DE 45, at 13-16.] I also declined to exercise supplemental jurisdiction over the Indiana state law claims because all of the federal claims were dismissed. [DE 45 at 16-18.] I did however give A.B. 30 days to file an amended complaint.

On October 11, 2011, A.B. filed a First Amended Complaint, again bringing claims under the FHA, ADA, and the Rehabilitation Act, the Fourteenth Amendment, the Indiana Constitution, and Indiana state law. [DE 46.] The First Amended Complaint largely consists of the same allegations from the original complaint, but it does add a handful of new factual allegations to support A.B.'s claim of disability discrimination, as well as his Fourteenth Amendment claims. (The allegations relating to the state law claims were left unchanged.)

In particular, A.B. now alleges that HASB regarded or treated Oliver as a drug abuser even though she does not use drugs and has successfully completed a drug rehabilitation program. [*Id.* at 15.] The Amended Complaint further alleges that HASB has "inconsistently, selectively, and unfairly threatened to evict A.B. in contrast to other similarly situated HASB tenants because HASB has favored tenants in situations similar to A.B. and his mother by not

3

evicting those tenants." [*Id.*] A.B. states that HASB has a "one strike" policy which states that residents caught using or possessing drugs on or near the apartment complex are subject to automatic eviction. [DE 49-1.] A.B. alleges that HASB's failure to modify its "one strike" policy, and give Oliver a second chance due to his mother's drug addiction disability, is a failure to accommodate in violation of the ADA. [DE 46, at 6.] The only other additions to the amended complaint that were not present in the original complaint are a series of lengthy paragraphs that simply paraphrase the language of the FHA, ADA, and Rehabilitation Act as well as a conclusory statement that the HASB has violated these statutes. [*Id.* ¶¶ 15, 16, 17(d), 17(h).] HASB has again moved to dismiss under Rule 12(b)(6) alleging that the Amended Complaint fails to state a claim.

## DISCUSSION

Before turning to the merits, there is an initial matter that I need to address regarding whether A.B., as a third party, can assert what are essentially his mother's rights. To be clear, HASB doesn't question A.B.'s Article III standing. Instead, it argues that A.B., as the son of a disabled person, cannot prosecute these claims on his mother's behalf. Essentially, these are arguments relating to the prudential limitations on a federal court's power to hear cases. *See e.g. Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008). But prudential standing (unlike Article III standing) can be waived, and since HASB failed to raise this argument until its reply brief, it's waived. *Estate of Philips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997).

HASB's argument is misplaced in any event because each cause of action permits claims by a plaintiff who suffers injury and is associated with the disabled individual. As to the FHA

claim, Congress intended standing under this statute "to extend to the full limits of Art. III." *South-Suburban Housing Center v. Greater South Suburban Bd. of Realtors*, 935 F.2d 868, 878 (7th Cir. 1991) (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 103 (1979)); 42 U.S.C. § 3604(f)(2) (prohibiting discrimination against any person associated with the disabled person). The ADA and Rehabilitation Act also permit persons associated with a disabled person to sue. 28 C.F.R. § 35.130(g) ("A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."); 29 U.S.C. § 794; *see Hale v. Pace*, No. 09-C-5131, 2011 WL 1303369, at *4 (N.D. Ill. March 31, 2011) (noting that the ADA allows non-disabled individuals to bring claims of discrimination "based on their association with disabled individuals"). The same is true as to A.B.'s Fourteenth Amendment claim. *Barless v. Carpenter*, 2010 WL 3521589, at *5 (W.D. Wis. Sept. 7, 2010) (permitting an equal protection claim to proceed where the plaintiff was associated with the discriminated group). A.B. may therefore bring a claim under the FHA, ADA, Rehabilitation Act, and Fourteenth Amendment because he is associated with Oliver, and he alleges that he suffered a direct injury when he and his mother were evicted.

Turning to the arguments at hand, the minimum requirements for pleading a claim for relief are contained in Rule 8. That rule requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Meanwhile, Rule 12(b)(6) provides for the dismissal of claims that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

The Supreme Court has retooled its interpretation of the pleading standards in recent years, beginning with its opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In the context of a motion to dismiss for failure to state a claim, the Court stated that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id*. at 555 (quotation marks and brackets omitted). What this means is that in order to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). Courts must accept all allegations as true and draw all reasonable inferences in the plaintiffs' favor, but need not accept threadbare legal conclusions supported only by conclusory statements. *Id.*

Here's what the Seventh Circuit says a complaint must do to survive dismissal: (1) it must describe the claim in sufficient detail to give the defendant fair notice of the grounds for the claim; and (2) the allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). Unfortunately, A.B.'s First Amended Complaint has done neither.

**I.     FHA, ADA, and Rehabilitation Act Claims**

The FHA, ADA, and Rehabilitation Act each prohibit a public entity from intentionally discriminating on the basis of an individual's disability; failing to provide reasonable accommodations to a disabled individual; and enacting a rule that has a discriminatory effect on the disabled (i.e. disparate impact). *See*, 42 U.S.C. § 3604(f) (FHA); 42 U.S.C. § 12132 (ADA); 29 U.S.C. § 794 (Rehabilitation Act); *Bloch v. Frischholz,* 587 F.3d 771, 784 (7th Cir. 2009);

*Wisconsin Comm. Services, Inc. v. City of Milwaukee,* 465 F.3d 737, 746-54 (7th Cir. 2006). For the purpose of this case, the standards for these claims under the three statutes are essentially the same and should be analyzed together. *See Oconomowoc Residential Programs v. City of Milwaukee,* 300 F.3d 775, 782 (7th Cir. 2002); *Jackson v. City of Chicago*, 414 F.3d 806, 810-11 (7th Cir. 2005); *Dadian v. Village of Wilmette*, 269 F.3d 831, 837 (7th Cir. 2001).

The threshold requirement to state a claim for disability discrimination under each statute are allegations that the Plaintiff is "disabled" as that term is used in those statutes. *See* 42 U.S.C. § 12102(1) (ADA); 45 C.F.R. § 84.3(j)(1) (HUD's definition of handicap for the Rehabilitation Act); 42 U.S.C. § 3602(h) (FHA).[2] An individual is disabled under the ADA, FHA, and Rehabilitation Act when she: (1) has a mental or physical impairment that substantially limits a major life activity; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. *See* 42 U.S.C. § 3602(h); 42 U.S.C. § 12102(3)(A); 29 U.S.C. § 705(9).

A.B. alleges that his mother is a qualified individual that has been regarded and treated as a current drug user and a person with a history of drug use by HASB. [DE 46 ¶ 6.] According to the Amended Complaint, A.B.'s mother was in a court ordered drug rehabilitation at the time she was evicted, but that "she made a 'mistake' on one occasion in 2011 and had taken an illegal drug." [*Id.*] This admission is fatal to the claim that Oliver is disabled. This is because current drug users are not entitled to protection under the ADA, Rehabilitation Act, or the FHA. *See* 42 U.S.C. § 12210(a) (ADA); 29 U.S.C. § 705(20)(C)(I) (Rehabilitation Act); 42 U.S.C. § 3602(h) (FHA).

---

[2]Because the ADA, Rehabilitation Act, and FHA define the terms "disabled" and "handicapped" in the same, those terms are used interchangeably throughout this opinion. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998); *Wisconsin Community Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 747 n.3 (7th Cir. 2006); *Stein v. Aschcroft*, 284 F.3d 721, 725 n.2 (7th Cir. 2002).

It is true that there are safe harbor protections for *past* drug abusers who have successfully completed, or are participating in a supervised drug rehabilitation program. But "the term *disability* . . . (does) not include individuals currently engaged in the illegal use of drugs when the covered entity acts on the basis of such use." 29 CFR 1630.3(a) (emphasis in original); *see* 42 U.S.C. § 12114(b) (ADA); 29 U.S.C. § 705(20)(C)(ii) (Rehabilitation Act); 24 C.F.R. § 100.201(a)(2) (FHA). The point is that it is perfectly permissible for an entity – an employer, a public housing authority etc. – to take an adverse action against someone who is caught using drugs. But what an entity cannot do is discriminate against someone for *past* drug use or for their efforts at drug rehabilitation. That is what it means to discriminate against someone on the basis of their status as a recovering drug or alcohol abuser.

The problem in this case is that by admitting that his mother was evicted as a result of her unlawful possession of drugs, A.B. has pled himself out of court. According to the First Amended Complaint, Oliver was arrested by the South Bend Police Department on February 28, 2011. [*See* DE 46 ¶¶ 8, 9.] On March 22, 2011, HASB issued the notice of the lease termination, citing her arrest and possession of cocaine as the reasons for eviction. [DE 49-1.] Oliver later pled guilty to possession of cocaine so there is no question that the drug violation occurred. Indeed, she admits as much in her Amended Complaint when she says that she "made a mistake" in early 2011 and took an illegal drug. [DE 46 at ¶ 6(a).] The notice from HASB specifically stated that she was being evicted because of the cocaine arrest. So HASB plainly "act(ed) on the basis of such (illegal drug) use" when it sent the eviction notice, and this means that because she was a then current drug user, she was not disabled at the time HASB sent the eviction notice. 29 C.F.R. §1630.3(a).

There is a legitimate question as to what point in time is someone's drug use measured against in relation to the allegedly discriminatory action. In an employment discrimination case, the Fifth Circuit defined the time to determine whether a plaintiff is "currently engaging in the illegal use of drugs" as the point at which the employer notified the employee he was being terminated. *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853-54 (5th Cir. 1999). Under this analysis, the appropriate time to measure whether Oliver was a "current drug user" was at the time HASB notified her of her eviction. That was only three weeks after she was caught with the drugs by the police. The fact that she has successfully completed drug rehabilitation – and according to A.B. her progress continues to this day – while certainly laudable, it is simply not pertinent to the inquiry as to whether HASB discriminated against Oliver when it sent her the notice of eviction three weeks after she was found in possession of cocaine.

Other Circuits have come to the same conclusion. For example, the Ninth Circuit has held that a plaintiff's drug involvement within weeks and months prior to termination is indicative of current use. *See Collings v. Longview Fibre Co.*, 63 F.3d 828, 833 (9th Cir.1995). The Ninth Circuit has also stated that "the safe harbor provision applies only to [plaintiffs] who have refrained from using drugs for a significant period of time." *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1186 (9th Cir. 2001). Similarly, the Tenth Circuit found a one month period of abstention an insufficient amount of time for a plaintiff to benefit from the safe harbor provision. *Mauerhan v. Wagner Corp.*, 649 F.3d 1180, (10th Cir. 2011). By contrast, a one year abstinence from drug use does not make someone a current user. *United States v. Southern Management Corp.*, 955 F.2d 914 (4th Cir.1992).

9

Our case is much closer to *Collings* and *Mauerhan* than it is to *Southern Management*. Obviously, the more time that passes from the drug use, the less one can reasonably say that the person is a current user. And where the line is exactly, may be hard to say. But where ever that line is drawn – and it could be different in every case, *see Teahan v. Metro-North Commuter R.R. Co.*, 951 F.2d 511 (2d Cir. 1991) (noting that a "current" use may be determined on a case-by-case basis), it seems clear that if someone is caught using or possessing drugs in late February and a little more than three weeks later the housing authority seeks their eviction, they are properly deemed a current drug user. *See e.g. Baustian v. State of Louisiana*, 910 F. Supp. 274, 276–77 (E.D. La. 1996) (finding that a drug-free period of seven weeks before termination was not sufficiently long enough under the ADA); *Quigley v. Austeel Lemont Co., Inc.*, 79 F. Supp. 2d 941, 945-46 (N.D. Ill. 2000) (holding that plaintiff's in-patient recovery program lasting for ten days and being drug free for a total period of one month before employee was terminated did not qualify under the ADA safe-harbor provision). In sum, because Oliver was a current drug user at the time HASB took it's action against her, she was not disabled under any of the pertinent statues at issue here.

Even if I did accept that Oliver may benefit from the safe harbor provisions under the FHA, ADA, and Rehabilitation Act, there are other problems with A.B.'s First Amended Complaint that mandates its dismissal. A.B. attempts to state a claim of disparate impact, disparate treatment, and a failure to accommodate but each theory is flawed.

To state a disparate impact claim, a complaint must identify a policy or practice that has a disparate impact on the disabled. *See Steele v. GE Money Bank*, No. 08-C-1880, 2009 WL 393860, at *3 (N.D. Ill. Feb. 19, 2009) (citing *Smith v. City of Jackson*, 544 U.S. 228, 241

(2005)). In other words, as the Seventh Circuit has held, singular or scattered incidents of discrimination are insufficient to constitute a specific employment practice. *Bennett v. Roberts*, 295 F.3d 687, 698 (7th Cir. 2002).

> A.B. attempted to state a claim for disparate impact by alleging that:
>
> HASB inconsistently, selectively, and unfairly threatened to evict A.B. in contrast to other similarly situated HASB tenants because HASB has favored tenants in situations similar to A.B. and his mother by not evicting those tenants.

[DE 46 ¶ 18(b).] This allegation doesn't speak to a practice or policy of HASB. Rather, it indicates the opposite – that HASB evicted Oliver for drug possession but not others. As A.B. doesn't provide any allegations as to other disabled tenants who were treated adversely due to an HASB policy or practice, he doesn't state a claim for disparate impact under the FHA, ADA, or Rehabilitation Act. *See Smith v. Housing Auth. of South Bend*, No. 3:09-cv-330, 2012 WL 1110102, at *11 (N.D. Ind. March 30, 2012).

The disparate treatment claim also fails. Intent to discriminate is an essential element of a disparate treatment claims under the FHA, ADA, and Rehabilitation Act. *See Board of Educ. of Twp. High Sch. Dist. No. 211 v. Ross*, 486 F.3d 267, 278 (7th Cir. 2007); *Bloch*, 587 F.3d at 784. Like the original complaint, the First Amended Complaint doesn't include tangible factual allegations of HASB's intent to discriminate. In fact, the majority of the allegations relating to intent are identical to the original complaint. Namely, A.B. alleges that less than a month after Oliver was arrested, she received a Notice stating that her lease was terminated because of her arrest, and that Oliver wouldn't be given an opportunity for a pre-termination hearing due to the nature of her criminal activity. [DE 46 ¶¶ 10-12.] Then A.B. alleges that "HASB's purported reasons for threatening to evict A.B. and his mother are illegal or pretextual, and only a cover for

11

discrimination against A.B.'s mother as an individual with a handicap." [DE 46 15(e).] Moreover, A.B. asserts repeatedly that "HASB acted intentionally, maliciously, and in wanton and reckless disregard of the rights and feelings of A.B." and discriminated against her because of her disability. [*Id.* ¶¶ 15(I), 16(d)(f), 17(c).]

> To buttress these allegations, the First Amended Complaint added these allegations:
>
> HASB's purported policies of evicting tenants for the reasons given in this case are refusals to make reasonable accommodations in rules, policies and practices, and are therefore discrimination against individuals with handicaps. . . . The intentional, malicious, and wanton and reckless disregard of the rights and feelings of A.B. is evident, in part, that HASB, its board of commissioners, its executive director, and Cornelius Lotte have not complied with the requirement of Title II of the ADA and of the Rehabilitation Act . . . .

[DE 46 ¶¶ 15(h), 17(h).] Following those new allegations, the Amended Complaint tacked on paragraphs that recite the language of the statutes and regulations related to FHA, ADA, and Rehabilitation Act claims. [*See id.* ¶¶ 15(I)-(n), 16-17.]

Despite the additional bulk, the Amended Complaint lacks acceptable allegations of intentional discrimination. As I explained in my prior opinion, to determine if these allegations plausibly allege discriminatory intent, I first must disregard conclusory allegations that are not entitled to the presumption of truth. *See Iqbal*, 129 S.Ct. at 1951. In the Supreme Court's ruling in *Iqbal*, the Court emphasized that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements' of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (internal citations omitted). The Court specifically rejected the notion that a plaintiff may allege discriminatory intent "generally" by merely asserting that the defendant discriminated against him "on account of" his protected status. *Id.* at 1954.

Although I directed A.B. to this authority, A.B. hasn't included non-conclusory allegations of intent. The fact that the Amended Complaint now mentions HASB's executive director, Cornelius Lotte, adds no detail as to HASB's intent to discriminate. Rather, A.B.'s allegation that Lotte and HASB failed to comply with the ADA and Rehabilitation Act is conclusory, and Rule 8 demands more than this type of "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949, 1954; *see also Swanson*, 614 F.3d at 405 ("[Conclusory] statements [] do not add to the notice that Rule 8 demands"); *see, e.g.*, *McReynolds v. Merrill Lynch & Co., Inc.*, No. 08-C-6105, 2011 WL 1196859, at *4 (N.D. Ill. Mar. 29, 2011) ("In short, plaintiffs allege that the system was designed with discriminatory intent, but under *Iqbal* they must do more. They must plead sufficient factual matter to show that defendants adopted and implemented the retention system not for a neutral reason, but for the purpose of discriminating against African-American Fas.").

My prior opinion also attempted to give A.B. practical guidance by pointing out the Seventh Circuit's reasoning in *Swanson*, but the Amended Complaint still falls short. In *Swanson*, the Seventh Circuit accepted an FHA claim of a plaintiff who had been turned down for a home equity loan because the complaint identified the type of discrimination (race), who acted in a discriminatory manner (the bank, through its manager), and when. 614 F.3d 400, 405 (7th Cir. 2010). The Seventh Circuit accepted the plaintiff's complaint as sufficient because it included allegations that the manager of the bank commented on the fact that he, his wife, and his son were part African-American. *Id.* at 402-03.

The facts A.B. added to the First Amended Complaint aren't nearly as specific as those included in the complaint in *Swanson*. Although the new allegation names an HASB employee,

13

it does nothing more than add the conclusory allegation that Lotte failed to comply with the statutes in failing to make a reasonable accommodation for Oliver's disability. [DE 46 ¶ 15(h).] The types of allegations that the Seventh Circuit found to be sufficient in *Swanson* are simply not present in A.B.'s First Amended Complaint. In sum, A.B. has failed to plead intentional discrimination.

Finally, A.B.'s failure to accommodate claims under the ADA, FHA, and Rehabilitation Act also can't proceed. [DE 45, at 12.] A failure to accommodate claim under any of these statutes requires the following allegations: (1) a disability; (2) the defendant was aware of the disability; and (3) the defendant failed to reasonably accommodate the disability. *Mobley v. Allstate Ins. Co.,* 531 F.3d 539 (7th Cir. 2008); *Dyrek v. Garvey*, 334 F.3d 590, 597 n. 3 (7th Cir. 2003) (noting that the elements of a failure to accommodate claim under the Rehabilitation Act are the same under the ADA); *Good Shepherd Manor Foundation, Inc. v. City of Monroe*, 323 F.3d 357 (7th Cir. 2003) (noting the elements of a failure to accommodate are the same under the ADA and the FHA.)

Taking A.B.'s allegations as true, HASB knew of Oliver's past drug use, and perceived her to be a current drug user or addict. A.B. alleges that HASB's failure to modify the "one strike" policy for tenants who are perceived to have a drug addiction disability was a failure to accommodate. He claims that his mother requested an accommodation during the June 24, 2011 proceeding in state court. [DE 46 ¶ 15(g).]

To buttress this claim, A.B. filed a Motion to Take Judicial Notice of the *Joint Statement of the Department of Housing and Urban Development and the Department of Justice Reasonable Accommodations under the Fair Housing Act* ("Joint Statement"). [DE 54.] This

14

statement was issued in 2004 to guide persons with disabilities and housing providers. [DE 54-1.] A.B. asks that I take notice of this statement, particularly because of Example 2. That example describes a scenario where a tenant threatened another tenant – due to a psychiatric disability – and the rental manager rightfully grants the tenant an exception to the "no threats" policy in the lease agreement provided that the tenant takes his medication and receives counseling. [DE 54-1, at 5-6.]

Under Fed. R. Evid. 201(a), only "adjudicative facts" may be subject to judicial notice. Because A.B. asks that I take judicial notice of a hypothetical scenario applying principles of the FHA, this isn't an adjudicative fact and the motion is denied. But denying the motion doesn't preclude me from reviewing it for guidance, and two examples therein actually affirm that A.B. has no reasonable accommodation claim. First, Example 1 in the Joint Statement provides helpful guidance. In Example 1, a housing provider receives an application from a woman that indicates she is an alcoholic. [DE 54-1, at 5.] In this scenario, the statement advises that the housing provider may not reject the application outright for that reason. However, if in the course of its normal reference check the provider learns that the applicant has posed a direct threat in the past and still poses such a threat, the applicant can be rejected. This is getting at the point discussed above that current drug user are not considered to be disabled and thus need not be accommodated. Example 1 illustrates the decision that HASB made here. HASB regarded Oliver as a drug user, but didn't evict her for that reason. Rather, she was evicted because she violated the terms of her lease by possessing cocaine on the premises. Therefore, she was not entitled to an accommodation.

Additionally, the Example 2 A.B. references is inapplicable to the facts at hand– whereas

Oliver was evicted for possession of cocaine here, the tenant in Example 2 was evicted for threatening another tenants. Although both leases barred the behavior that caused the eviction, Oliver's disability didn't cause her to possess cocaine, while the Example 2 tenant's psychiatric disability did cause him to make the threats. All three statutes require accommodations only when there is a causal connection between the disability and the plaintiff's ineligibility for housing. *Wisconsin Cmnty. Serv. Inc. v. Cty. of Milwaukee,* 465 F.3d 737, 749 (7th Cir. 2006) (analyzing a failure to accommodate claim under the Rehabilitation Act, FHA, and the ADA).[3] As there is no causal connection between Oliver's alleged disability and her possession of drugs on the premises, there was no need to accommodate her.

Aside from the absent connection between her disability and possession of drugs, A.B.'s request for an excuse from the "one strike" policy is unreasonable. A modification to a rule is unreasonable under these statutes "if it is so at odds with the purpose behind the rule that it would be fundamental and unreasonable to change." *Oconomowac Residential Programs v. Cty. of Milwaukee*, 300 F.3d 775, 785 (7th Cir. 2002) (citation omitted). Oliver's possession of cocaine was illegal, and rendered her ineligible for public housing pursuant to her lease, HUD regulations, and federal statutes. *See* 42 U.S.C. § 147d(1)(6) (requiring public housing leases to state that any drug related criminal activity during the lease term shall be grounds for lease termination); 42 U.S.C. § 13661(b)(1)(A) (prohibiting public housing owners from admitting users of illegal drugs). Indeed, the Supreme Court has made it clear that a housing authority has

---

[3] The Seventh Circuit analyzes a failure to accommodate claim under the Rehabilitation Act and FHA by asking "whether the rule in question, if left unmodified, 'hurts handicapped people by reason of their handicap, rather than . . . by virtue of what they have in common with other people . . . .'" *Wisconsin Cmnt. Serv.,* at 749. (quoting *Hemisphere Bldg. Co., Inc. v. Vill. of Richton Park*, 171 F.3d 437, 440 (7th Cir.1999)). The ADA is analyzed under a similar standard. It requires the plaintiff to show that, "but for" his disability, he would have been able to access the services or benefits desired. *See Washington v. Indiana High Sch. Athletic Assoc.*, 181 F.3d 840, 849 (7th Cir.1999) (requiring a high school to modify its rule prohibiting "red-shirting" for a student whose learning disability required him to miss a year of school).

the "discretion to conduct no fault evictions for drug-related crime." *Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 135 (2004). The whole purpose behind a "one strike" policy is to keep public housing free of drugs. As harsh as it may be, that effort would be entirely frustrated if everyone received a second chance.

The problem is aptly illustrated in *Pernice v. City of Chicago*, 237 F.3d 783, 786-87 (7th Cir. 2001). In *Pernice*, the City of Chicago discharged Pernice after he was arrested for disorderly conduct and possession of cocaine in violation of city personnel rules. *Id.* at 784. Pernice argued that his termination violated the ADA because his drug addiction "created a wholly involuntary need to possess drugs," and the compulsion resulted in termination. *Id.* at 785. The Seventh Circuit affirmed dismissal of the action because it is "well-established that an employee can be terminated for violations of valid work rules that apply to all employees, even if the employee's violations occurred under the influence of a disability." *Id.* It reasoned that a plaintiff's misconduct (possession of drugs) is wholly separate from her alleged disability (her record of drug use). 237 F.3d at 786-787. That line of reasoning holds true here – holding otherwise would require HASB to "accept egregious behavior" by a tenant with an alleged record of drug use "when the same behavior, exhibited by a nondisabled [tenant] would require [lease] termination." *Id.* at 785-86. Such an accommodation is simply unreasonable.

In sum, it makes no practical sense to require HASB to accommodate criminal conduct. *Department of Housing and Urban Dev. v. Rucker*, 535 U.S. 125, 135 (2002) (no fault eviction for drug-related activity is constitutional). In the absence of facts relating to HASB's decision to evict unrelated to Oliver's possession of drugs, A.B.'s failure to accommodate claim, along with his disparate impact and disparate treatment claims, are dismissed.

## II. Fourteenth Amendment Claim

As to his due process and equal protection claims under the Fourteenth Amendment, these claim are dismissed as well. I previously dismissed these claims, and the only addition in the First Amended Complaint is the following :

> [HASB] has inconsistently, selectively, and unfairly threatened to evict A.B. in contrast to other similarly situated HASB tenants because HASB has favored tenants in situations similar to A.B. and his mother by not evicting those tenants (at least one of whom was related to an HASB employee).

[DE 46 ¶ 18(b).] Yet to state a claim under the equal protection clause, a plaintiff must allege that the defendant was "motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 645 (7th Cir. 2001). I concluded above that this allegation fails to establish discriminatory intent, so the equal protection claim fails.

A.B. made no changes to the due process of law claim. In my prior opinion, I dismissed that claim because Oliver had the opportunity to contest her eviction through the Indiana state court system. As the First Amended Complaint doesn't change the facts related to Oliver's ability to appeal the eviction decision, this claim is dismissed because the state court eviction procedures were adequate. 24 C.F.R. § 966.53(c); *see Jones v. Housing Auth. of City of South Bend*, 915 N.E.2d 490, 497 (Ind. App. 2009) ("Notice and opportunity to be heard is precisely what the procedural safeguards of 24 C.F.R. § 966.53(c) provide.").

### III. Indiana State Law Claims

Finally, A.B. claims that HASB violated A.B.'s right to due course of law under the Indiana Constitution and exceeded its statutory authority under Indiana's *quo warranto* statute. I am dismissing all federal claims, and as a general rule, "when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir. 1998) (quoting *Wright v. Associated Ins. Cos. Inc.,* 29 F.3d 1244, 1251 (7th Cir. 1994)); 28 U.S.C. § 1367(c)(3). The exceptions to this rule are when the statute of limitations has run on the state law claims, substantial judicial resources have already been used, or it is absolutely clear how the state law issues should be decided. *Sharp Electronics Corp. v. Metropolitan Life Ins. Co.,* 578 F.3d 505, 514-15 (7th Cir. 2009). In the previous opinion, I dismissed all state claims without prejudice because the statute of limitations had not run, substantial judicial resources hadn't been exhausted because the case was in its infancy, and it was unclear how Indiana courts would resolve the *quo warranto* claim. [DE 45 at 17.] As these issues remain the same, HASB's motion to dismiss the Indiana state claims is **GRANTED**, and these claims are dismissed without prejudice.

### CONCLUSION

For the foregoing reasons, the Motion to Take Judicial Notice [DE 54] is **DENIED**, Defendant HASB's Motion to Dismiss [DE 48] is **GRANTED**, with prejudice as to the ADA, FHA, Rehabilitation Act, and Fourteenth Amendment Claims, and without prejudice as to the claims under Indiana law.

**SO ORDERED**.

ENTERED: May 18, 2012

                                        s/ Philip P. Simon
                                        PHILIP P. SIMON, CHIEF JUDGE
                                        UNITED STATES DISTRICT COURT